# In the United States Court of Federal Claims

No. 17-900V

(Filed under seal: February 7, 2019)

(Reissued: February 22, 2019)

| | |
|---|---|
| **HOUSTON BYRD, JR.,** ) | Vaccine claim; motion for review of |
| ) | chief special master's dismissal of |
| **Petitioner,** ) | petition for compensation; |
| ) | prosecution of vaccine claim; |
| **v.** ) | documentation of claim; persistence |
| ) | of alleged injury; due process |
| **SECRETARY OF HEALTH AND** ) | |
| **HUMAN SERVICES,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

Houston Byrd, Jr., Newark, Ohio, *pro se*.

Mallori B. Openchowski, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for respondent. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Civil Division, and C. Salvatore D'Alessio, Acting Director, and Catharine E. Reeves, Deputy Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER[1]

LETTOW, Senior Judge.

Houston Byrd, Jr., has moved for review of the dismissal of his petition for compensation under the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, tit. III, §§ 301-323, 100 Stat. 3743, 3755 (1986) (codified, as amended, at 42 U.S.C. §§ 300aa-1 to 300aa-34) (the "Vaccine Act"). Mr. Byrd petitioned for compensation from the National Vaccine Injury Compensation Program on July 3, 2017, and, after numerous proceedings before two special masters, his petition was dismissed on November 29, 2018 for failure to prosecute under Rule 21(b)(1) of Appendix B ("Vaccine Rule") of the Rules of the Court of Federal Claims ("RCFC"). *Byrd v. Secretary of Health & Human Servs.*, No. 17-900V, 2018 WL 6918820, at *2 (Fed. Cl. Spec. Mstr. Nov. 29, 2018). Mr. Byrd sought review of that dismissal by a motion filed on December 20, 2018, Mot. for . . . Review . . . ("Pet'r's Mot."), ECF No. 49, and

---

[1]In accord with Rule 18(b) of Appendix B of the Rules of the Court of Federal Claims, this opinion and order was initially filed under seal. By rule, the parties had fourteen days to propose redactions.

submitted a supplement to his motion on January 17, 2019, Mot. for . . . Review . . . ("Pet'r's Suppl."), ECF No. 52.  The government responded in opposition on January 22, 2019.  Resp't's Mem. in Resp. to Pet'r's Mot. for Review ("Resp't's Mem."), ECF No. 53.  Mr. Byrd replied to the government on February 5, 2019, by filing a motion to strike the government's response to the motion to review, ECF No. 54.

The court finds no material error of either fact or law nor any abuse of discretion in the actions or orders by either of the two special masters who were severally assigned to Mr. Byrd's case.[2]  Therefore, the petitioner's motion for review is DENIED and the chief special master's decision to dismiss the petition is AFFIRMED.

## BACKGROUND

On October 1, 2015, Mr. Byrd received seasonal influenza and Pneumovax vaccinations from the pharmacy of a local supermarket.  *See* Pet. at 1-2, 6;[3] *Byrd*, 2018 WL 6918820, at *1. Mr. Byrd claimed that "[w]ithin hours [of the vaccinations], [he] became sick," eventually becoming bedridden and [unable to] eat or drink."  Pet. at 2.  Mr. Byrd alleged that due to the two vaccinations, he "lost 20 pounds, had [and still has] severe headaches and stomachaches . . ., a more elevated blood sugar level and difficulty gaining the weight back."  Pet. at 2.

Mr. Byrd sought treatment from Licking Memorial Hospital on October 27, 2015.  Pet. at 2.  He was diagnosed with abdominal pain, abnormal weight loss, headaches, a urinary tract infection, and hyperglycemia (*i.e.*, high blood sugar).  Pet. at 10-11.  None of his diagnoses were attributed to a cause, though hyperglycemia may result from diabetes and may cause symptoms such as lethargy, lightheadedness, or abdominal pain.  Pet. at 10-11.  Treatment consisted of three medications.  Pet. at 2, 11.  Mr. Byrd was discharged the same day.  Pet. at 10-11.

Mr. Byrd filed a report with Vaccine Adverse Event Reporting System (VAERS) on February 14, 2016, identified as 622723.  Pet. at 2.

On July 3, 2017, twenty-one months after his vaccinations, Mr. Byrd filed his petition for compensation.  Mr. Byrd's petition briefly described the vaccinations he had received and his injuries.  Pet. at 1-2.  His petition included six pages of undesignated exhibits:[4] an "Immunization Administration Record" from Giant Eagle Pharmacy dated October 1, 2015, showing that Mr. Byrd received the seasonal influenza vaccine, Pet. at 6 ("Ex. A"); three pages

---

[2]In conjunction with expressing disagreements with the originally assigned special master's case scheduling orders, Mr. Byrd sought recusal of that special master.  *See* Pet'r's Submission (Mar. 5, 2018), ECF No. 26.  The case was reassigned to the chief special master for an unrelated reason.  Order of Mar. 7, 2018, ECF No. 27.

[3]The page numbering of the petition refers to that assigned by the court's electronic case management system.

[4]The exhibits are unmarked and will be referred to as exhibits A-C to differentiate them from later-filed numbered exhibits.

of medical billing claims dated October 27, 2015, Pet. 7-9 ("Ex. B"); and two pages of "Discharge Instructions" for Mr. Byrd from Licking Memorial Hospital, dated October 27, 2015, which set out the diagnoses, Pet. 10-11 ("Ex. C").

Following an initial status conference held on August 3, 2017, the assigned special master ordered Mr. Byrd to provide by October 2, 2017, medical records covering three years prior to the vaccinations and any records of doctor visits since vaccination. Order of Aug. 4, 2017, ECF No. 11. Mr. Byrd responded three weeks later with, among other things, 35 pages of additional medical records. *See* Mot. for . . . Amend. to Claim ("Pet'r's Amend."), ECF No. 12.[5] The medical records consisted of three numbered exhibits. Exhibit 1 contained four pages of results from blood testing performed on February 9, 2016, by Licking Memorial Hospital. Pet'r's Amend. Ex. 1, at 5. Exhibit 2 consisted of 26 pages of records from Mr. Byrd's visit on October 27, 2015 to Licking Memorial Hospital, which contained a summary of his visit and a report of blood tests results. *Id.* Ex. 2, at 9. The summary indicated that Mr. Byrd said his symptoms of "nausea, vomiting, abdominal pain and 10 lb weight loss" began after receiving the flu and pneumonia shots. *Id.* Ex. 2, at 12. The summary also noted a history of diabetes and that Mr. Byrd's blood sugar level had been increasing over the two prior weeks. *Id.* Ex. 2, at 3. Exhibit 3 was a report of blood testing by the Ohio State University Wexner Medical Center dated June 6, 2014, for samples taken the previous month. *Id.* Ex. 3.

Over the next twelve months, Mr. Byrd made a series of additional submissions to the special masters, including a motion for summary judgement that was denied. *See* Order of January 2, 2018, ECF No. 21. Other submissions objected to case management decisions. *See, e.g.*, Mot. to Waive Status Conference (July 28, 2017), ECF No. 9. The government consistently contested the adequacy of the medical records provided by Mr. Byrd. *E.g.*, Resp't's Resp. to Pet'r's Mot. for Obj. and Amend. to Claim (Sept. 1, 2017), ECF No. 13. Mr. Byrd persisted in his objections to the special master's case management orders, *see* Pet'r's Submission (Mar. 5, 2018), ECF No. 26, and the case was reassigned to the chief special master, Order of Mar. 5, 2018, ECF No. 27. Despite repeated orders by the special masters directing Mr. Byrd to file medical records and make himself available for status conferences, *see, e.g.*, Order of May 2, 2018, ECF No. 38; Order of June 28, 2018, ECF No. 44, Mr. Byrd did not comply.[6] At that point, the chief special master issued an Order to Show Cause to Mr. Byrd, ECF No. 45, directing him to produce (1) medical records, (2) an expert report from a reputable, qualified medical doctor, and (3) evidence that his injuries persisted for six months, *id.* Mr. Byrd filed objections to the Order to Show Cause but did not otherwise comply. Pet'r's Mem. of Obj. to Chief Master's Sept. 6, 2018 Order & Recusal, ECF No. 46. On November 29, 2018, the chief

---

[5]The submission also set out three objections, among other things, resisting any requirement to provide additional medical records, and proffered two amendments to the petition.

[6]Having failed to get Mr. Byrd to participate in a statue conference, the chief special master issued the Order of June 28, 2018 to satisfy Vaccine Rule 5's requirement to "present tentative findings and conclusions" within 30 days of the government's vaccine report. *See* Vaccine Rule 5(a)(3).

special master dismissed Mr. Byrd's petition for failure to prosecute. *Byrd*, 2018 WL 6918820, at *2.

The chief special master held that Mr. Byrd needed to show his injuries lasted for more than six months, and, because his alleged injuries were not covered by the Vaccine Injury Table, he also had to prove causation under the standard set forth in *Althen v. Secretary of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005). *Byrd*, 2018 WL 6918820, at *2 (citing *Althen*, 418 F.3d at 1278). The chief special master found that the records presented by Mr. Byrd failed to satisfy these requirements, noting that Mr. Byrd had been given over a year to file additional medical records and that Mr. Byrd had repeatedly ignored court orders to do so. *Id.*, at *2.

Mr. Byrd filed a motion to review the special master's decision on December 20, 2018. Pet'r's Mot. Mr. Byrd's arguments on review are similar to those raised in his prior objections to the special masters, including the contentions that he filed all records he had available, that he had no obligation to gather and file the requested additional records, that the special masters violated procedural rules and laws, and that the chief special master acted as the government's counsel and not as a neutral arbiter. *Id.* at 2-5; *see also* Pet'r's Suppl. at 1-2. He also argues that the chief special master erred in concluding that the Pneumovax vaccine is not listed in the Vaccine Injury Table. *See* Pet'r's Suppl. at 3.

## JURISDICTION

Jurisdiction exists under 42 U.S.C. § 300aa-12(e), which permits this court to "review the decision" of a special master when the petitioner files a motion to review within 30 days of issuance of the decision. 42 U.S.C. § 300aa-12(e)(1); *see also* Vaccine Rule 23(a).[7] Upon the filing of a timely motion for review, this court "shall have jurisdiction to undertake a review of the record of the proceedings and may . . . set aside any finding of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law." 42 U.S.C. § 300aa-12(e)(2); *see also Masias v. Secretary of Health & Human Servs.*, 634 F.3d 1283, 1287 (Fed. Cir. 2011).[8]

Mr. Byrd has timely filed his motion for review. *See* Pet'r's Mot. Accordingly, this court may review the propriety of the dismissal of his petition in light of the evidence presented

---

[7] A motion for review "must be accompanied by a memorandum of numbered objections" that "fully and specifically state and support each objection to the decision, including specific citations to the record . . . ." Vaccine Rule 24. Mr. Byrd's motion for review does not comply with Vaccine Rule 24. Nevertheless, given Mr. Byrd's *pro se* status, the court has granted him leeway on procedural matters. *See, e.g., McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007).

[8] Contrary to Mr. Byrd's request, *see* Pet'r's Mot. at 1, review of a special master's decision is conducted by a randomly-selected judge of the Court of Federal Claims. *En banc* review is neither contemplated nor available in this court. *See* Vaccine Rule 36(b)(6); *see also* Vaccine Rule 26; RCFC 40.1(a).

and the applicable legal standards, to include a review of whether any orders preceding the dismissal materially prejudiced Mr. Byrd's petition or contravened due process.

## STANDARD OF REVIEW

This court reviews the decision of a special master to ensure that it was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa-12(e)(2); *see also, e.g., Masias*, 634 F.3d at 1287. Findings of fact are reviewed under the "highly deferential" arbitrary and capricious standard. *Masias*, 634 F.3d at 1287 (citing *Hines v. Secretary of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)). "If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Id.* at 1287-88 (quoting *Hines*, 940 F.2d at 1528). Discretionary decisions are reviewed for abuse of discretion. *Id.* at 1288 (citing *Munn v. Secretary of Health & Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992)). Abuse of discretion exists when the "court's decision is clearly unreasonable, arbitrary, or fanciful," based upon legal error, or the findings are clearly erroneous or without rational support in the record. *Simmons v. Secretary of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Hendler v. United States*, 952 F.2d 1364, 1380 (Fed. Cir. 1991)). "'Not in accordance with the law' refers to the application of the wrong legal standard, and the application of the law is reviewed *de novo*." *Id.* (quoting *Rodriguez v. Secretary of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011)).

## ANALYSIS

Mr. Byrd argues, in effect, that the special masters applied the incorrect legal standard to his petition. He contends that contrary to the dismissal decision, the Pneumovax vaccine is covered by the Vaccine Act, and he provides a link to a government website in support. Pet'r's Mot. at 3; *see also Byrd*, 2018 WL 6918820, at *1 n.2. Mr. Byrd also repeatedly objected to orders to provide medical records for three years prior to his vaccination and for six months after the onset of his alleged injuries. *E.g.*, Pet'r's Mot. at 2; Pet'r's Suppl. at 1-2. He also claims that the special masters committed procedural errors and that he was denied due process. Pet'r's Mot. at 2, 3-4, 5; Pet'r's Suppl. at 2-3.

The chief special master dismissed any claim relating to the Pneumovax vaccine, concluding that "[it] is not covered by the Vaccine Act." *Byrd*, 2018 WL 6918820, at *1 n.2. For the seasonal influenza vaccine, the chief special master concluded that Mr. Byrd had to show his injuries persisted for more than six months. *Id.*, at *2. Further, because the chief special master concluded that the injuries allegedly suffered by Mr. Byrd due to the seasonal influenza vaccine were not covered by the Vaccine Injury Table, she required Mr. Byrd to prove causation with medical evidence under the *Althen* standard. *Id.*, at *2 (citing *Althen*, 418 F.3d at 1278). The chief special master also refused to credit Mr. Byrd's claims absent corroborating medical evidence. *Id.*

### A. The Pneumovax Claim

The compensation program established under the Vaccine Act applies only to vaccines listed in the Vaccine Injury Table, as amended. 42 U.S.C. § 300aa-11(b)(1)(A). Non-covered

vaccines are ineligible for compensation under this program.  The Vaccine Injury Table lists "[s]easonal influenza vaccines" and "[p]neumococcal conjugate vaccines."  42 C.F.R. § 100.3 (2017) (Vaccine Injury Table).

Mr. Byrd states that he received the Pneumovax vaccine manufactured by Merck.  Pet. at 2.  Merck's Pneumovax is a pneumococcal polysaccharide vaccine, not a pneumococcal conjugate vaccine.  *E.g.*, Merck, *Highlights of Prescribing Information [for Pneumovax]* at §§ 6.1, 8.4, 11 (2011), https://www.merckvaccines.com/products/pneumovax23 (follow "Prescribing Information" hyperlink) (describing Pneumovax as a polysaccharide vaccine) (last accessed Feb. 6, 2019).  The Vaccine Injury Table does not cover pneumococcal polysaccharide vaccines, as the website indicated by Mr. Byrd notes.  *See* Department of Health & Human Servs., Health Res. & Servs. Admin., *Covered Vaccines* (Sept. 2018), https://www.hrsa.gov/vaccine-compensation/covered-vaccines/index.html ("*Note*: Pneumococcal polysaccharide vaccine (PPSV, PPV) is not a VICP-covered vaccine."); *see also* 42 C.F.R. § 100.3 (not listing pneumococcal polysaccharide vaccines).  Accordingly, the Pneumovax vaccine is not covered by the Vaccine Act, and Mr. Byrd's Pneumovax claim was properly dismissed.

### B.  The Influenza Claim

For vaccines covered by the Vaccine Act, such as seasonal influenza vaccines, the Act divides compensation eligibility into two categories.  42 U.S.C. § 300aa-11(c)(1)(C).  A petitioner can show the onset of a specified injury associated with the vaccine within a time specified in the Vaccine Injury Table.  *Id.* § 300aa-11(c)(1)(C)(i); *see also* 42 C.F.R. § 100.3.  But if the injury is not associated with the vaccine or the onset occurs outside the specified time, the petitioner must show causation.  42 U.S.C. § 300aa-11(c)(1)(C)(ii).  The petitioner must then also show that the injury either lasted for more than six months after vaccination, or required inpatient hospitalization or surgery.  *Id.* § 300aa-11(c)(1)(D).  When determining whether the petitioner has met this burden, the "special master or court may not [rely] on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion," *Id.* § 300aa-13(a)(1), and "may require such evidence . . . [and] information, [and] may conduct such hearings as may be reasonable and necessary," *Id.* § 300aa-12(d)(3)(B).

The Vaccine Injury Table associates four injuries with the seasonal influenza vaccine: onset of anaphylaxis within four hours, shoulder injury within 48 hours, onset of vasovagal syncope (*i.e.*, fainting) within one hour, and onset of Guillain-Barré Syndrome three to 42 days after vaccination.  *See* 42 C.F.R. § 100.3.  None of the injuries alleged by Mr. Byrd or diagnosed by Licking Memorial Hospital are listed on the Table, and thus Mr. Byrd had the burden of demonstrating causation.

The six exhibits provided by Mr. Byrd were insufficient to either prove causation or demonstrate persistence of injuries for six months.  Mr. Byrd received the vaccine on October 1, 2015, *e.g.*, Pet. Ex. A, and the latest date covered by the records he submitted is February 9, 2016, Pet'r's Amend. Ex. 1, a period of substantially less than six months.[9]  Mr. Byrd's showing

---

[9] Mr. Byrd's Exhibit 1 does not contain a diagnosis, only results of blood testing, and does not mention Mr. Byrd's vaccinations.

that his injuries persisted beyond six months rests on his assertions alone, which the law requires the special master to disregard if "unsubstantiated by medical records or medical opinion." *See* 42 U.S.C. § 300aa-13(a)(1). Mr. Byrd also never claimed, nor provided evidence to support, inpatient hospitalization or surgery.[10]

Mr. Byrd's motion asks, "what documentation does the court have to support the [dismissal]?" Pet'r's Mot. at 1. But it is Mr. Byrd who has the burden of production; he must produce evidence of causation and of his injuries. Mr. Byrd asserts he has provided all available medical records. *Id.* at 2. Perhaps.[11] But that then means that the available medical records are insufficient to meet his burden. Mr. Byrd responds that neither the Vaccine Act nor this court's Vaccine Rules require him to provide the additional medical records requested by the special masters. *E.g.*, *id.* at 1-2. But absent medical records pre-dating the vaccination, records of his injuries, and records showing that his injuries lasted at least six months, the chief special master was obliged to dismiss his petition. Before awarding compensation, a special master must find by a preponderance of the evidence that: (1) Mr. Byrd received a covered vaccine; (2) Mr. Byrd sustained an injury either covered in the Table or caused by the vaccine; (3) the injury lasted at least six months or resulted in inpatient hospitalization or surgery; (4) an unrelated cause does not exist; and (5) medical records or opinions exist to support these contentions. 42 U.S.C. § 300aa-13; *see also id.* § 300aa-11(c)(1). These required evidentiary elements supplied the impetus for the special masters' repeated requests that Mr. Byrd provide additional medical records. The special masters also endeavored to explain these requirements to Mr. Byrd.

In sum, the Vaccine Act obliged the special masters to require Mr. Byrd to demonstrate causation and injuries with medical records or opinions, permitted them to request such evidence, and obliged the chief special master to dismiss Mr. Byrd's petition absent such evidence. Accordingly, the court finds that the special masters exercised proper discretion when ordering Mr. Byrd to provide medical records or opinions and finds the dismissal of his petition to be well-supported and appropriate. *See Sapharas v. Secretary of Dep't of Health & Human Servs.*, 35 Fed. Cl. 503, 505 (1996) (approving dismissal of a petitioner's claim for failure to substantiate and to prosecute the claim).

### C. Due Process

Mr. Byrd objects to procedural orders issued by the special masters, contending that they violated his rights to due process. Among other things, Mr. Byrd alleges that the special masters interposed themselves as the defendants and should have recused themselves for various improprieties. Pet'r's Mot. at 2, 4, 5. Relatedly, Mr. Byrd unsuccessfully sought recusal of the chief special master. *See* Mot. for Recusal of Chief Special Master at 1-3, ECF No. 41; Order

---

[10]Mr. Byrd spent approximately six hours at Licking Memorial Hospital on October 27, 2015, and was discharged to his own care. Pet'r's Amend. Ex 2.

[11]Mr. Byrd has not explained why he has been unable obtain a corroborating medical opinion in the in the nearly 17 months his petition was pending.

Denying Mot. for Recusal, ECF No. 42.[12] Mr. Byrd contended that the chief special master "fail[ed] to competently and ethically [deal] with [e]vidence in the [f]indings" and failed "to comply with Vaccine Rules," by requiring status conferences, requiring submission to the court of a VAERS report, issuing unsupported orders, and engaging in unspecified *ex parte* communications. Mot. for Recusal of Chief Special Master at 1-3.

Recusal is required "in any proceeding in which [the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This is an objective test, which mandates recusal "when a reasonable person, knowing all the facts, would question the judge's impartiality." *Allphin v. United States*, 758 F.3d 1336, 1344 (Fed. Cir. 2014) (quoting *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1568 (Fed. Cir. 1989)). Disagreement with the special masters' interpretation and application of legal standards or case management orders provides no grounds for recusal. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . . Almost invariably, they are proper grounds for appeal, not for recusal."). Mr. Byrd has also failed to provide any evidence that either special master displayed bias, had a personal interest in the outcome of the case, or engaged in *ex parte* communications.

As discussed previously, the special masters acted properly and as allowed by the Vaccine Act and Vaccine Rules by requesting additional medical evidence and endeavoring to hold status conferences, *see, e.g.*, 42 U.S.C. §§ 300aa-12(d)(3)(B), 300aa-13(a)(1); *Burns ex rel. Burns v. Secretary of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) ("A special master . . . has wide discretion in conducting the proceedings."), especially after putting Mr. Byrd on notice regarding the importance of both, *see Masias*, 634 F.3d at 1291 n.10 (rejecting that a special master's "'inquisitorial' mode of adjudication" violated due process or relegated the special master to "the role of an adversary" when the special master placed the petitioner on notice of the information on which he intended to rely in making his decision regarding attorneys' fees and gave the petitioner an opportunity to respond). The special masters afforded Mr. Byrd multiple opportunities to be heard. Far from showing antipathy towards Mr. Byrd or violations of due process, the special masters' actions demonstrate patience and care by ensuring that Mr. Byrd had a reasonable opportunity to substantiate his claim for compensation under the Vaccine Act. They were careful to explain why additional medical records were required and to provide time for Mr. Byrd to gather the requisite materials. Mr. Byrd, in contrast, refused to comply with orders, attend telephonic conferences, or even provide contact information despite repeated requests. *See, e.g.*, Order of May 2, 2018, ECF No. 38. The special masters should be commended, not condemned, for their efforts to accommodate a *pro se* claimant.

Mr. Byrd also contends that the dismissal decision was untimely, as 514 days elapsed between the filing of the petition and the dismissal, while the Vaccine Rules require a decision within 240 days. Pet'r's Mot. at 2-3. The Vaccine Act requires the special master to issue a

---

[12]Mr. Byrd also sought recusal of the initially assigned special master, but the request was rendered moot by an unrelated decision to reassign the case to the chief special master. Mot. for Obj., Recusal . . . at 1, ECF No. 31; Order of Mar. 7, 2018 (reassigning the case).

decision within 240 days of the petition being filed. 42 U.S.C. § 300aa-12(d)(3)(A)(ii).[13]  After 240 days elapses, the special master must notify the petitioner of the right to withdraw the petition or continue the proceeding.  *Id.* § 300aa-12(g); *see also id.* § 300aa-21.  A petitioner who elects to continue will "have the petition remain before the special master or court, as the case may be." *Id.* § 300aa-12(g).  The special master provided the required notice to Mr. Byrd on February 28, 2018, 240 days after he filed his petition, that 240 days had elapsed.  *See* Formal Notice (Feb. 28, 2018), ECF No. 24.  Mr. Byrd responded within the prescribed 30-days and did not elect to withdraw his petition.  Pet'r's Mot. for Continuance of Pet. . . . , ECF No. 30.  Much of the delay in resolution of this case was to afford Mr. Byrd additional time to provide medical records.  Thus, there was nothing improper about the petition remaining with a special master and nothing untimely about the dismissal decision.

In sum, the court finds no error with the chief special master's decision to dismiss Mr. Byrd's petition or with any of the preceding case management decisions.  Mr. Byrd's numerous objections, whether in the motion for review or in pre-dismissal motions, lack merit.

## CONCLUSION

For the reasons stated, petitioner's motion for review of the chief special master's decision to dismiss his petition is DENIED and her decision is AFFIRMED.[14]  The clerk shall enter judgment accordingly.

It is so **ORDERED**.

_____
Charles F. Lettow
Senior Judge

_____

[13]A special master may suspend the proceeding for up to 180 days upon motion of either party if "reasonable and necessary," 42 U.S.C. § 300aa-12(d)(3)(C), but neither party moved for a suspension, *see* Formal Notice (Feb. 28, 2018), ECF No. 24.

[14]Mr. Byrd's motion to strike respondent's opposition to his motion to review is DENIED.